**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EVELYN RODRIGUEZ, JANINE
BONDERENKO, JENNIFER ELLER and
KAYLA ATKINS, on behalf of themselves and all
others similarly situated,

          Plaintiffs,

      -against-

THREE AMIGOS SJL INC., THREE AMIGOS
SJL REST., INC., TIMES SQUARE
RESTAURANT NO. 1, INC., TIMES SQUARE
RESTAURANT GROUP, LTD., SELIM "SAM"
ZHERKA, and DOMINICA O'NEILL,

          Defendants.



**CLASS AND COLLECTIVE
ACTION COMPLAINT**



Plaintiffs Evelyn Rodriguez, Janine Bonderenko, Jennifer Eller and Kayla Atkins (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### INTRODUCTION

1.     This case seeks to redress the wage and hour and employment rights of exotic entertainers (dancers) at Cheetahs Gentlemen's Club & Restaurant ("Cheetahs"), an adult club located at 252 West 43rd Street, New York, New York 10036. Like other "club owners", the defendants have systemically violated the rights of the class members under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("Labor Law").

2.     Over the years, entertainers at adult clubs like Cheetahs have successful shown that the industry has denied the dancers their statutory compensation under the FLSA and state labor laws. Despite the numerous determinations of courts throughout the country that the compensation

1

structure for dancers violated the FLSA and state labor laws, the club's greed overrode their well-settled obligations to their employees.

3.      Cheetahs, a popular New York City adult club, is one such club. Misclassifying the dancers as independent contractors in order to deprive them of their rights to minimum wage, overtime, spread of hours pay and their commissions under federal and New York State wage and hour laws, Cheetahs has lined their own pockets at the expense of the employees. To add insult to injury, Cheetahs has improperly required the dancers to pay house fees to work and failed to provide a uniform allowance.

4.      As a result of Cheetahs improper employment practices, the plaintiffs and those similarly situated with them, are entitled to substantial compensatory, liquidated and punitive damages.

5.      Cheetahs is owned and operated by Three Amigos SJL Inc., Three Amigos SJL Rest., Inc., Times Square Restaurant No.1, Inc., Times Square Restaurant Group, Ltd., Selim "Sam" Zherka, and Dominica O'Neill (collectively, "Defendants").

## THE IMPROPER EMPLOYMENT PRACTICES

6.      Cheetahs fails to pay entertainers the statutory minimum hourly wage, premium overtime compensation for all of the hours they work in excess of 40 hours per workweek, and spread-of-hours pay when the length of their workday is greater than 10 hours.

7.      Despite similar situated clubs using the same improper independent contractor designations for the dancers and having been determined to be improperly collecting "house" fees, Cheetahs did so and continues to do so, from entertainers for each shift that they work. Cheetahs also require entertainers to pay additional house fees as "fines" if they are late or if they are unable to work a scheduled shift.

8.     Cheetahs prohibits entertainers from keeping all of the tips that they earn, by requiring entertainers to share their tips with workers who do not provide customer service, including but not limited to "House Moms" and DJs.

9.     Cheetahs encourages customers to tip entertainers using club scrip, which customers purchase from the club to use instead of cash. When an entertainer receives a tip from a customer in club scrip, Cheetahs deducts and retains a portion of the tip when the entertainer exchanges the club scrip for cash. Consequently, customers who believe they are tipping entertainers a certain amount are actually tipping them less.

10.     Cheetahs requires entertainers to purchase club-approved uniforms, often directly from Cheetahs, but refuses to provide the dancers the costs of the uniforms or for their maintenance and upkeep.

## THE PLAINTIFFS' CLAIMS

11.     Plaintiffs Rodriguez, Bonderenko and Eller bring this action on behalf of themselves and all similarly situated current and former entertainers who elect to opt-in to this action pursuant to 29 U.S.C. § 216(b), the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

12.     Plaintiffs also assert New York State law claims on behalf of themselves and all similarly situated current and former entertainers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ *650 et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiffs**

**Evelyn Rodriguez**

13.     Evelyn Rodriguez ("Rodriguez") is an adult individual who is a resident of New York.

14.     Rodriguez was employed by Defendants as an entertainer at Cheetahs from in or around May 2010 through December 2013.

15.     Rodriguez is a covered employee within the meaning of the FLSA and the NYLL.

16.     A written consent form for Rodriguez is being filed with this Class Action Complaint.

**Janine Bonderenko**

17.     Janine Bonderenko ("Bonderenko") is an adult individual who is a resident of Hawaii.

18.     Bonderenko was employed by Defendants as an entertainer at Cheetahs from in or around 2007 through July 2012.

19.     Bonderenko is a covered employee within the meaning of the FLSA and the NYLL.

20.     A written consent form for Bonderenko is being filed with this Class Action Complaint.

**Jennifer Eller**

21.     Jennifer Eller ("Eller") is an adult individual who is a resident of Los Angeles, California.

22.     Eller was employed by Defendants as an entertainer at Cheetahs from in or around January 2011 through May 30, 2012.

23.     Eller is a covered employee within the meaning of the FLSA and the NYLL.

24.     A written consent form for Eller is being filed with this Class Action Complaint.

**Kayla Atkins**

25.     Kayla Atkins ("Atkins") is an adult individual who is a resident of Austin, Texas.

26.     Defendants employed Atkins as an entertainer at Cheetahs from in or around February 2011 through March 2011. Atkins is a covered employee within the meaning of the NYLL.

**Defendants**

27.     Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant.

28.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

**Three Amigos SJL Inc.**

29.     Three Amigos SJL Inc. ("Three Amigos SJL") has owned and/or operated Cheetahs during the relevant period.

30.     Three Amigos SJL is a domestic business corporation organized and existing under the laws of New York.

31.     Upon information and belief, Three Amigos SJL's principal executive office is located at 252 West 43rd Street, New York, New York 10036, the address of Cheetahs.

32.     Three Amigos SJL is the "Premises Name" that appears on the New York State Liquor Authority license for the premises doing business as "CHEETAHS GENTLEMENS CLUB & REST," located at "252 W 43RD STREET, 7TH & 8TH, NEW YORK, NY 10036."

33.    Three Amigos SJL is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

34.    At all relevant times, Three Amigos SJL has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

35.    Three Amigos SJL applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

36.    Upon information and belief, at all relevant times, Three Amigos SJL'S annual gross volume of sales made or revenue generated exceeded $500,000.00.

**Three Amigos SJL Rest., Inc.**

37.    Together with the other Defendants, Three Amigos SJL Rest., Inc. ("Three Amigos SJL Rest.") has owned and/or operated Cheetahs during the relevant period.

38.    Three Amigos SJL Rest. is a domestic business corporation organized and existing under the laws of New York.

39.    Upon information and belief, Three Amigos SJL Rest.'s principal executive office is located at 252 West 43rd Street, New York, New York 10036, the address of Cheetahs.

40.    Three Amigos SJL Rest. is the "Premises Name" that appears on the New York State Liquor Authority license for the premises doing business as "CHEETAH'S NYC," located at "252 W 43RD ST, NEW YORK, NY 10036."

41.    Three Amigos SJL Rest. is the parent company of Cheetah's.

42.     Three Amigos SJL Rest. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

43.     At all relevant times, Three Amigos SJL Rest. has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

44.     Three Amigos SJL Rest. applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

45.     Upon information and belief, at all relevant times, Three Amigos SJL Rest.'s annual gross volume of sales made or business done was not less than $500,000.00.

**Times Square Restaurant No.1, Inc.**

46.     Together with the other Defendants, Times Square Restaurant No.1, Inc. ("Restaurant No.1") has owned and/or operated Cheetahs during the relevant period.

47.     Restaurant No.1 is a domestic business corporation organized and existing under the laws of New York.

48.     Restaurant No.1's name is located on documents within Cheetahs regarding private room dances and payment receipts.

49.     Restaurant No.1 operates its business within Cheetah's, providing management and promotional services for Cheetah's Champagne VIP rooms and admissions to Cheetah's.

50.     Restaurant No.1 is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

51. At all relevant times, Restaurant No.1 has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

52. Restaurant No.1 applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

53. Upon information and belief, at all relevant times, Restaurant No.1's annual gross volume of sales made or business done was not less than $500,000.00.

**Times Square Restaurant Group, Ltd.**

54. Together with the other Defendants, Times Square Restaurant Group, Ltd. ("Restaurant Group") has owned and/or operated Cheetahs during the relevant period.

55. Restaurant Group is a domestic business corporation organized and existing under the laws of New York.

56. Upon information and belief, Restaurant Group's principal executive office is located at 252 West 43rd Street, New York, New York 10036, the address of Cheetahs.

57. Restaurant Group's name is located on documents within Cheetahs regarding private room dances and payment receipts.

58. Restaurant Group operates its business within Cheetah's, operating a talent and booking agency within Cheetah's.

59. Restaurant Group is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

60.     At all relevant times, Restaurant Group has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

61.     Restaurant Group applies the same employment policies, practices, and procedures to all entertainers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, customer tips, and uniform-related expenses, and the making of unlawful deductions.

62.     Upon information and belief, at all relevant times, Restaurant Group's annual gross volume of sales made or business done was not less than $500,000.00.

### Selim "Sam" Zherka

63.     Upon information and belief, Selim Zherka ("Zherka") is a resident of the State of New York.

64.     Zherka is identified by the New York State Liquor Authority as a "Principal" for the premises doing business as "CHEETAH'S NYC," located at "252 W 43RD ST, NEW YORK, NY 10036," and the premises doing business as "CHEETAHS GENTLEMENS CLUB & REST," located at "252 W 43RD STREET, 7TH & 8TH, NEW YORK, NY 10036."

65.     At all relevant times, Zherka has had the power over personnel decisions at Cheetahs, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

66.     At all relevant times, Zherka has had power over payroll decisions at Cheetahs, including the power to retain time and/or wage records.

67.     At all relevant times, Zherka has been actively involved in managing the day to day operations of Cheetahs.

68. At all relevant times, Zherka has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

69. During Plaintiffs' employment at Cheetahs, Zherka was generally present at the club multiple times per week and repeatedly held meetings with entertainers regarding club rules.

70. At all relevant times, Zherka has had the power to transfer the assets and/or liabilities of Cheetahs.

71. At all relevant times, Zherka has had the power to declare bankruptcy on behalf of Cheetahs.

72. At all relevant times, Zherka has had the power to enter into contracts on behalf of Cheetahs.

73. At all relevant times, Zherka has had the power to close, shut down, and/or sell Cheetahs.

74. Zherka is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Dominica O'Neill**

75. Upon information and belief, Dominica O'Neill ("O'Neill") is a resident of the State of New York.

76. O'Neill was "the President of Times Square No.1" and was involved in the day-to-day operations of said business.

77. O'Neill is identified by the New York State Liquor Authority as a "Principal" for the premises doing business as "CHEETAH'S NYC," located at "252 W 43RD ST, NEW YORK, NY 10036."

78.     At all relevant times, O'Neill has had the power over personnel decisions at Cheetahs, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

79.     At all relevant times, O'Neill has had power over payroll decisions at Cheetahs, including the power to retain time and/or wage records.

80.     At all relevant times, O'Neill has been actively involved in managing the day to day operations of Cheetahs.

81.     At all relevant times, O'Neill has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

82.     At all relevant times, O'Neill has had the power to transfer the assets and/or liabilities of Cheetahs.

83.     At all relevant times, O'Neill has had the power to declare bankruptcy on behalf of Cheetahs.

84.     At all relevant times, O'Neill has had the power to enter into contracts on behalf of Cheetahs.

85.     At all relevant times, O'Neill has had the power to close, shut down, and/or sell Cheetahs.

86.     O'Neill is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

87.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

88.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

89.     The Court has subject matter jurisdiction over Plaintiff Atkins claims under NYLL pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) since: 1) her claims are brought under Fed.R.Civ.P. 23 and 1 or more of the proposed plaintiffs are minimally diverse from the defendants; 2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and 3) the number of members of all proposed plaintiffs is more than 100 who were employed as dancers during the six (6) years prior to the commencement of this action.

90.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

91.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs Rodriguez, Bonderenko and Eller bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who work or have worked as entertainers at Cheetahs in New York, who elect to opt-in to this action (the "FLSA Collective").

93.     Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs and the FLSA Collective.

94.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid minimum wages for all hours worked or the appropriate premium overtime compensation for all hours worked beyond 40 per workweek.

95.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

96.     As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.  willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, minimum wages for all hours worked and the appropriate premium overtime wages for all hours worked in excess of 40 hours in a workweek; and

    b.  willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

97.     Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying Plaintiffs and the FLSA Collective as independent contractors, and failing to properly compensate Plaintiffs and the FLSA Collective for the hours they work.

98.     Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective minimum wage for all of the hours they worked and overtime premiums for hours worked in excess of 40 hours per week.

99.     Plaintiffs and the FLSA Collective perform or performed the same primary duties.

100.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

101.    There are many similarly situated current and former entertainers who have been denied minimum wage and overtime compensation in violation of the FLSA who would benefit

from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

102.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

103.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of service awards upon resolution of this action.

## CLASS ACTION ALLEGATIONS

104.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as entertainers (dancers) at Cheetahs in New York between December 24, 2008 and the date of final judgment in this matter (the "Rule 23 Class").

105.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

106.    The members of the Rule 23 Class are so numerous that joinder of all members is impracticable. Upon information and belief, the size of the Rule 23 Class is at least 100 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

107. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

108. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

a. whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

b. whether Defendants misclassified Plaintiffs and the Rule 23 Class as independent contractors rather than employees;

c. whether Defendants failed to pay Plaintiffs and the Rule 23 Class minimum wages for all of the hours they worked;

d. whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

e. whether Defendants failed to provide Plaintiffs and the Rule 23 Class with spread-of-hours pay when the length of their workday was greater than 10 hours;

f. whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips paid by customers that were intended for Plaintiffs and the Rule 23 Class, and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class;

g. whether Defendants distributed or retained a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

h. whether Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class, including, but not limited to, deductions for house fees and fines, cash out fees, and mandatory tip outs, in violation of the NYLL;

i. whether Defendants failed to reimburse Plaintiffs and the Rule 23 Class for uniform-related expenses in violation of the NYLL;

j. whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class, and other records required by the NYLL;

k. whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with proper annual wage notices, as required by the NYLL;

l. whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with proper statements with every payment of wages, as required by the NYLL;

m. whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

n. the nature and extent of class-wide injury and the measure of damages for those injuries.

109.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants as entertainers at Cheetahs in New York. Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be properly compensated for all hours worked, to be paid spread-of-hours pay, to retain customer tips, to not have unlawful deductions made from their wages, and to be reimbursed for uniform-related expenses. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have

been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

110. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class. Plaintiffs recognize that any resolution of a class action must be in the best interest of the class. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the Rule 23 members.

111. In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of service awards upon resolution of this action.

112. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the

financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

113. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## CLASS-WIDE FACTUAL ALLEGATIONS

114. Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively "Class Members") have been victims of a common policy and plan perpetrated by Defendants that have violated their rights under the FLSA and the NYLL by denying them a minimum wage, proper overtime compensation, spread-of-hours pay, tips, uniform-related expenses, and proper wage notices and wage statements.

115. At all times, Defendants' unlawful conduct, policies, and patterns or practices described in this Class Action Complaint have been willful.

### Wage and Hour Violations

116. As part of their regular business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and Class Members by engaging in a pattern, practice, *and/or* policy of violating the FLSA and the NYLL as described in this Class Action Complaint. This pattern, practice, and/or policy includes, but is not limited to the following:

    a. failing to pay Plaintiffs and Class Members at least the applicable minimum hourly wage rate free and clear under the FLSA and the NYLL for all hours worked;

    b. failing to pay Plaintiffs and Class Members proper overtime compensation for the hours they worked in excess of 40 hours in a workweek;

c. failing to pay Plaintiffs and Class Members spread-of hours pay for workdays of 10 hours or more;

d. unlawfully demanding, retaining, and receiving portions of the tips that Plaintiffs and Class Members earned;

e. requiring Plaintiffs and the Class Members to share their tips with management, agents of management, and/or other employees who are not busboys or similar employees, and/or who are not in customarily tipped positions, and/or who have no, or virtually no, customer service duties;

f. refusing to exchange club script that customers used to tip Plaintiffs and Class Members for cash;

g. making deductions from Plaintiffs' and Class Members' wages, including but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs;

h. failing to reimburse Plaintiffs and Class Members for their uniform expenses, including the cost of laundering and maintaining their uniforms;

i. failing to pay Plaintiffs and the Class Members the NYLL statutory rate for laundering and maintenance of their uniforms

j. failing to keep accurate and adequate records of tips and wages paid to Plaintiffs and Class Members, deductions taken from their tips and wages, allowances or other credits taken by Defendants, and hours worked by Plaintiffs and Class Members as required by the FLSA and the NYLL;

k. failing to comply with the posting and/or notice requirements of the FLSA and the NYLL;

117.    Upon information and belief, Defendants' unlawful conduct described in this Class Action Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

118.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

119.    Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and Class Members. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the law with respect to the compensation of Plaintiffs and Class Members.

120.    Because Defendants' violations of the FLSA have been willful a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

121.    Defendants' deceptive conduct - including, but not limited to, taking steps to lead Plaintiffs and Class Members to believe that they were independent contractors and not employees - prevented Plaintiffs and Class Members from discovering or asserting their claims any earlier than they did. As such, Plaintiffs and Class Members are entitled to equitable tolling.

**Supervision and Control of Plaintiffs and Class Members**

122.    Defendants have had the power to hire and fire Plaintiffs and Class Members.

123.    Defendants have supervised and controlled Plaintiffs and Class Members' schedules and conditions of work.

124.    Defendants have implemented rules that governed Plaintiffs' and Class Members' working conditions.

125.    Among other things, Defendants have required Plaintiffs and Class Members to:

a.   work a minimum of three shifts per week;

b. work on certain days of the weeks and at certain times according to a schedule set by Cheetahs;

c. pay a fine if they arrive late to work or do not work a scheduled shift;

d. purchase uniforms approved by Cheetahs, often directly from Cheetahs;

e. wear certain types of uniforms and hairstyles;

f. remain dressed in their uniforms until the end of their shifts;

g. maintain different sets of uniforms for each stage;

h. dance on stage for at least three songs in a row and remain on stage until the next entertainer arrives;

i. share tips with other employees, such as the House Mom and DJ; pay house fees; and

j. pay a cash out fee to exchange club scrip into cash.

126. Among other things, Defendants prohibited Plaintiffs and Class Members from:

a. wearing certain types of uniforms or hairstyles;

b. changing into street clothes before the end of their shift;

c. using glitter;

d. wearing the same uniform multiple times in a week;

e. carrying cell phones on the dance floor;

f. chewing gum while at work;

g. leaving the stage before the next entertainer arrived; and

h. discussing the club's operating procedures with customers, including the terms of their compensation or payment.

127.    Defendants determined the rate and method of payment of Plaintiffs and Class Members, including but not limited to the percentage of tips that Cheetahs would retain and the fact that the Plaintiffs and Class Members would not receive any minimum wages.

128.    Defendants maintained employment records for Plaintiffs and Class Members.

## PLAINTIFFS' FACTUAL ALLEGATIONS

129.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Evelyn Rodriguez**

130.    Defendants did not pay Rodriguez the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

131.    Throughout her employment, Defendants did not pay Rodriguez any hourly wages.

132.    During her employment, Rodriguez generally worked an average of approximately three to four shifts per week from approximately 5-8:00 p.m. to 4:00 a.m., though there were weeks when she worked more than four shifts in a week.

133.    Defendants suffered or permitted Rodriguez to work over 40 hours per week as an entertainer, up to a maximum of approximately 45 hours per week. During such workweeks, Defendants did not compensate Rodriguez at time and one-half the full minimum wage rate for all of the overtime hours she worked.

134.    Defendants did not pay Rodriguez one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday - including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

135.     Defendants did not allow Rodriguez to retain all of the tips she earned.

136.     Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Rodriguez earned.

137.     Defendants unlawfully redistributed part of Rodriguez's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms" and DJ's.

138.     Defendants made unlawful deductions from Rodriguez's wages, including, but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs.

139.     Defendants required Rodriguez to purchase and wear a uniform that: (a) could not be worn as part of Rodriguez's ordinary wardrobe; (b) was not made of "wash and wear" materials; (c) could not be routinely washed and dried with other personal garments; and (d) required ironing, dry cleaning, daily washing, and/or other special treatment. Defendants did not launder and/or maintain Rodriguez's mandatory uniform, pay Rodriguez the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse Rodriguez for uniform-related expenses.

140.     Defendants did not keep accurate records of wages or tips earned, or of hours worked by Rodriguez.

141.     Defendants failed to furnish Rodriguez with proper annual wage notices, as required by the NYLL.

142.     Defendants failed to furnish Rodriguez with a proper statement with every payment of wages, as required by the NYLL.

**Janine Bonderenko**

143.     Defendants did not pay Bonderenko the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

144.     Throughout her employment, Defendants did not pay Bonderenko any hourly wages.

145.     During her employment, Bonderenko generally worked an average of approximately three to four shifts per week from approximately 5-8:00 p.m. to 4:00 a.m., though there were weeks when she worked over four shifts in a week.

146.     Defendants suffered or permitted Bonderenko to work over 40 hours per week as an entertainer, up to a maximum of approximately 45 hours per week. During such workweeks, Defendants did not compensate Bonderenko at time and one-half the full minimum wage rate for all of the overtime hours she worked.

147.     Defendants did not pay Bonderenko one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday - including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

148.     Defendants did not allow Bonderenko to retain all of the tips she earned.

149.     Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Bonderenko earned.

150.     Defendants unlawfully redistributed part of Bonderenko's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms" and DJ s.

151. Defendants made unlawful deductions from Bonderenko's wages, including, but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs.

152. Defendants required Bonderenko to purchase and wear a uniform that: (a) could not be worn as part of Bonderenko's ordinary wardrobe; (b) was not made of "wash and wear" materials; (c) could not be routinely washed and dried with other personal garments; and (d) required ironing, dry cleaning, daily washing, and/or other special treatment. Defendants did not launder and/or maintain Bonderenko's mandatory uniform, pay Bonderenko the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse Bonderenko for uniform-related expenses.

153. Defendants did not keep accurate records of wages or tips earned, or of hours worked by Bonderenko.

154. Defendants failed to furnish Bonderenko with proper annual wage notices, as required by the NYLL.

155. Defendants failed to furnish Bonderenko with a proper statement with every payment of wages, as required by the NYLL.

**Jennifer Eller**

156. Defendants did not pay Eller the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

157. Throughout her employment, Defendants did not pay Eller any hourly wages.

158. During her employment, Eller generally worked an average of approximately three to four shifts per week from approximately 5-8:00 p.m. to 4:00 a.m., though there were weeks when she worked over four shifts in a week.

159.     Defendants suffered or permitted Eller to work over 40 hours per week as an entertainer, up to a maximum of approximately 45 hours per week. During such workweeks, Defendants did not compensate Eller at time and one-half the full minimum wage rate for all of the overtime hours she worked.

160.     Defendants did not pay Eller one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday - including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

161.     Defendants did not allow Eller to retain all of the tips she earned.

162.     Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Eller earned.

163.     Defendants unlawfully redistributed part of Eller's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms" and DJ s.

164.     Defendants made unlawful deductions from Eller's wages, including, but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs.

165.     Defendants required Eller to purchase and wear a uniform that: (a) could not be worn as part of Eller's ordinary wardrobe; (b) was not made of "wash and wear" materials; (c) could not be routinely washed and dried with other personal garments; and (d) required ironing, dry cleaning, daily washing, and/or other special treatment. Defendants did not launder and/or maintain Eller's mandatory uniform, pay Eller the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse Eller for uniform-related expenses.

166.     Defendants did not keep accurate records of wages or tips earned, or of hours worked by Eller.

167.     Defendants failed to furnish Eller with proper annual wage notices, as required by the NYLL.

168.     Defendants failed to furnish Eller with a proper statement with every payment of wages, as required by the NYLL.

**Kayla Atkins**

169.     Defendants did not pay Atkins the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

170.     Throughout her employment, Defendants did not pay Atkins any hourly wages.

171.     During her employment, Atkins generally worked an average of approximately three to four shifts per week from approximately 5-8:00 p.m. to 4:00 a.m., though there were weeks when she worked over four shifts in a week.

172.     Defendants suffered or permitted Atkins to work over 40 hours per week as an entertainer, up to a maximum of approximately 45 hours per week. During such workweeks, Defendants did not compensate Atkins at time and one-half the full minimum wage rate for all of the overtime hours she worked.

173.     Defendants did not pay Atkins one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday - including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

174.     Defendants did not allow Atkins to retain all of the tips she earned.

175. Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Atkins earned.

176. Defendants unlawfully redistributed part of Atkins' tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, such as "House Moms" and DJs.

177. Defendants made unlawful deductions from Atkins' wages, including, but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs.

178. Defendants required Atkins to purchase and wear a uniform that: (a) could not be worn as part of Atkins' ordinary wardrobe; (b) was not made of "wash and wear" materials; (c) could not be routinely washed and dried with other personal garments; and (d) required ironing, dry cleaning, daily washing, and/or other special treatment. Defendants did not launder and/or maintain Atkins' mandatory uniform, pay Atkins the required weekly amount for uniform maintenance in addition to the required minimum wage, or reimburse Atkins for uniform-related expenses.

179. Defendants did not keep accurate records of wages or tips earned, or of hours worked by Atkins.

180. Defendants failed to furnish Atkins with proper annual wage notices, as required by the NYLL.

181. Defendants failed to furnish Atkins with a proper statement with every payment of wages, as required by the NYLL.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act - Minimum Wages
### (Brought on behalf of Plaintiffs Rodriguez, Bonderenko, Eller, and the FLSA Collective)

182.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

183.     Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

184.     Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

185.     At all times relevant, Plaintiffs and the members of the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

186.     At all times relevant, Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

187.     At all times relevant, Defendants have been employers of Plaintiffs and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

188.     The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the FLSA Collective.

189.     Defendants have failed to pay Plaintiffs and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

190.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices

described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

191.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

192.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act - Overtime Wages
**(Brought on behalf of Plaintiffs Rodriguez, Bonderenko, Eller, and the FLSA Collective)**

193.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

194.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of the FLSA Collective.

195.     Defendants have failed to pay Plaintiffs and the members of the FLSA Collective the premium overtime wages to which they are entitled under the FLSA for all hours worked beyond 40 per workweek.

196.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith

effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the FLSA Collective.

197.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

198.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
**New York Labor Law - Minimum Wages**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

199.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

200.     Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

201.     At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the members of the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

202.     At all times relevant, Plaintiffs and the members of the Rule 23 Class have been covered by the NYLL.

203. The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

204. Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

205. Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiffs and the members of the Rule 23 Class the full minimum wage at a rate of: (a) $7.15 per hour for all hours worked from December 24, 2008 to July 23, 2009; and (b) $7.25 per hour for all hours worked from July 24, 2009 through December 30, 2013; and (c) $8.00 per hour for all hours worked from December 31, 2013 through the present.

206. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

207. Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law - Unpaid Overtime
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

208. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

209.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

210.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 per workweek.

211.    Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and the members of the Rule 23 Class.

212.    Through their knowing or intentional failure to pay Plaintiffs and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

213.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
### New York Labor Law - Spread-of-Hours Pay
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

214.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

215.    Defendants have failed to pay Plaintiffs and the members of the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty - was greater than 10 hours.

216.     Through their knowing or intentional failure to pay Plaintiffs and the members of the Rule 23 Class spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

217.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
### New York Labor Law -Tip Misappropriation
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

218.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

219.     At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees within the meaning of NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

220.     At all times relevant, each Defendant has been an employer within the meaning of the NYLL, Article 6, § § 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

221.     The wage payment provisions of Article 6 of the NYLL, and the supporting New York State Department of Labor Regulations, apply to Defendants, and protect Plaintiffs and the members of the Rule 23 Class.

222.     Defendants have unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

223.    Defendants have unlawfully retained part of the gratuities earned by Plaintiffs and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

224.    Defendants have required Plaintiffs and the members of the Rule 23 Class to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL, Article 6 § 196-d, and the supporting New York State Department of Labor Regulations.

225.    Through their knowing or intentional demand for, acceptance of, and/or retention of gratuities received by Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

226.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment interest.

## SEVENTH CAUSE OF ACTION
### New York Labor Law - Unlawful Deductions from Wages
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

227.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

228.    Defendants have made unlawful deductions from the wages of Plaintiffs and the members of the Rule 23 Class, including, but not limited to, deductions for house fees, fines, club scrip cash out fees, and mandatory tip outs.

229.     The deductions made from the wages of Plaintiffs and the members of the Rule 23 Class have not been authorized or required by law.

230.     The deductions made from the wages of Plaintiffs and the members of the Rule 23 Class have not been expressly authorized in writing by Plaintiffs and the members of the Rule 23 Class, and have not been for the benefit of Plaintiffs and the members of the Rule 23 Class.

231.     Through their knowing or intentional efforts to permit unauthorized deductions from the wages of Plaintiffs and the members of the Rule 23 Class, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

232.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
### New York Labor Law - Uniform Violations
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

233.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

234.     Defendants have required Plaintiffs and the members of the Rule 23 Class to purchase and wear a uniform consisting of clothing that is not ordinary basic street clothing selected by Plaintiffs and the members of the Rule 23 Class, and that may not be worn as part of Plaintiffs' and the members of the Rule 23 Class' ordinary wardrobe.

235.     Defendants have failed to reimburse Plaintiffs and the members of the Rule 23 Class for the costs of purchasing mandatory uniforms.

236.     Defendants have failed to launder and/or maintain mandatory uniforms for Plaintiffs and the members of the Rule 23 Class, and have failed to pay Plaintiffs and the members of the Rule 23 Class the required weekly amount for uniform maintenance in addition to the required minimum wage.

237.     Through their knowing or intentional failure to pay and/or reimburse Plaintiffs and the members of the Rule 23 Class for mandatory uniform-related expenses, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

238.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants the costs of purchasing and maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION
### New York Labor Law - Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiffs and the members of the Rule 23 Class)

239.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

240.     Defendants have willfully failed to furnish Plaintiffs and the members of the Rule 23 Class with wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in

accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

241.     Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

242.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with wage notices, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

### TENTH CAUSE OF ACTION
**New York Labor Law - Failure to Provide Proper Wage Statements**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

243.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

244.     Defendants have willfully failed to furnish Plaintiffs and the members of the Rule 23 Class with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances,

if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

245.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, § § 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

246.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(l-d).

**WHEREFORE,** Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.   Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all entertainers (dancers) who are presently working, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Cheetahs.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.   Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E. Payment of reasonable service awards to Plaintiffs, in recognition of the services they have rendered and will continue to render to the FLSA Collective and Rule 23 Class, and the risks they have taken on behalf of the FLSA Collective and Rule 23 Class;

F. Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, § § 190 *et seq.,* NYLL, Article 19, § § 650 *et seq.,* and the supporting New York State Department of Labor Regulations;

G. Unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated gratuities, unlawful deductions, uniform-related expenses, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H. Statutory penalties of fifty-dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with proper annual wage notices, or a total of twenty-five hundred dollars each, as provided for by NYLL, Article 6 § 198;

I. Statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with proper wage statements, or a total of twenty-five hundred dollars each, as provided for by NYLL, Article 6 § 198;

J. Prejudgment and post-judgment interest;

K. An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

L. Reasonable attorneys' fees and costs of the action; and

M. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
February 4, 2015

Respectfully,

_Frank R. Schirripa, Esq._

**HACH ROSE SCHIRRIPA &
CHEVERIE LLP**

Michael A. Rose, Esq.
Frank R. Schirripa, Esq.
John A. Blyth, Esq.
185 Madison Avenue, 14th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile (212) 779-0028

-and-

**HARFENIST KRAUT & PERLSTEIN
LLP**

Steven J. Harfenist, Esq.
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
Telephone: (516) 355-9600
Facsimile: (516) 355-9601

*Attorneys for Plaintiffs and
the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT TO JOIN

1. I consent to be a party plaintiff in a lawsuit against Cheetahs Gentlemen's Club & Restaurant and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate HACH ROSE SCHIRRIPA & CHEVERIE LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_Evelyn Rodriguez_
Signature

_Evelyn Rodriguez_
Full Legal Name (Print)

# FAIR LABOR STANDARDS ACT CONSENT TO JOIN

1.  I consent to be a party plaintiff in a lawsuit against Cheetahs Gentlemen's Club & Restaurant and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.  By signing and returning this consent form, I hereby designate HACH ROSE SCHIRRIPA & CHEVERIE LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


_Janine Bonderenko_
Signature

_Janine Bonderenko_
Full Legal Name (Print)

FAIR LABOR STANDARDS ACT CONSENT TO JOIN

1. I consent to be a party plaintiff in a lawsuit against Chocolate Gentlemen's Club &/or Restaurant and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate HACH ROSE SCHIRRIPA & CHEVERIE LLP (the "Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other Plaintiffs. I understand that the Firm will petition the Court for attorney's fee from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying the usual hourly rates by the number of hours expended on the lawsuit; or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_____
Signature

_____
Full Legal Name (Print)